# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MARTIN OGDEN, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No.  SA-08-CV-609-XR |
| | § | |
| JOHN E. POTTER, POSTMASTER | § | |
| GENERAL, UNITED STATES POSTAL | § | |
| SERVICE, | § | |
| | § | |
| *Defendant*. | § | |

## ORDER ON MOTION FOR SUMMARY JUDGMENT

On this day, the Court considered Defendant's Motion for Summary Judgment (Docket Entry No. 25). Having considered the motion, Plaintiff's response, Defendant's reply, and the available evidence, the Court GRANTS Defendant's motion.

## Background

Plaintiff Martin Ogden is employed as a letter carrier with the United States Postal Service. He filed this suit against Defendant John Potter, Postmaster General of the United States Postal Service. Ogden is sixty-nine years old and since 1999, he has worked at the Valley Hi Postal Station in San Antonio, Texas. He states that in 2005 he served as the Union Steward for postal employees, represented various employees in their claims against managers, and instructed employees of their legal rights to file complaints of discrimination and retaliation. In his response to Defendant's motion for summary judgment, Ogden cites his involvement in thirteen complaints to the United States Postal Service's Equal Opportunity office, most of which have been resolved informally. (Pl.'s Resp. to Def.'s Mot. for Summ. J. (Nov. 13, 2009) [Docket Entry No. 25] (Resp.).)  He "asserts that all his complaints of discrimination, retaliation, and hostile work environment, after

2004 have been filed against Mr. Ennis Page." (*Id.*) Ennis Page is Ogden's supervisor.

Ogden bases this lawsuit on claims of age discrimination, retaliation, and hostile work environment in connection with three events that occurred on October 13, 2005, October 17, 2005, and November 3, 2005. (Pl's 1st Am. Compl. (Oct. 6, 2008) [Docket Entry No. 8].) On Saturday, October 8, 2005, Ogden broke his false teeth after biting a piece of bone in a hamburger. He did not suffer any pain and did not need to wear the false teeth during the weekend; however, the broken false teeth caused cuts and pain when he placed them in his mouth. On Tuesday, October 11, 2005, Ogden made an appointment with the Lee Dental Clinic, which was a stop on his mail delivery route, for Thursday, October 13, 2005. So he could attend the Thursday appointment, Ogden completed and submitted a leave request form on October 11.

The Postal Service lost Ogden's leave request form; however, Page testifies that he granted the request. Ogden claims he assumed Page denied his request when told by Page that he would need to handle certain duties on October 13. For purposes of this evaluation, Defendant requests that the Court assume that Page denied the request. Based on a lack of communication between Ogden and Page, it was never clearly indicated to Ogden whether the request for leave was granted or denied. Testimony indicates that Page did not volunteer the information nor did Ogden ask for a specific answer or clarification regarding his request.

Ogden rescheduled his appointment for Monday, October 17, 2005, which he scheduled for a time after his work hours. He submitted a request for one hour and fifteen minutes of auxiliary assistance stating that his route was overburdened. The effect of Ogden's request was that he would work a scheduled eight-hour work day with no overtime so he could attend the after-work dentist appointment. The Postal Service denied the request and when Ogden returned to the station with

2

undelivered mail, Acting Station Manager Jimmy Rodriguez directed him to complete his route.

Ogden completed the route and visited the dental clinic, which was open beyond its usual operating hours that evening. The repairs were completed over three subsequent visits. The Postal Service approved a request for leave for one of those visits that occurred during scheduled work hours.

On November 3, 2005, Page issued a letter of warning to Ogden for "Unacceptable Performance – Failure to Follow Instructions" in connection with the incident regarding the denial of Ogden's request for auxiliary assistance and the events on October 17, 2005.[1] Ogden protested the letter, and it was rescinded and removed from his personnel file.

## Procedural History

Ogden filed an Equal Employment Opportunity Complaint of Discrimination with the Postal Service on December 26, 2005, in connection with the denial of his requests for leave and for auxiliary assistance. He alleged age discrimination, harassment, and retaliation for filing previous grievances. The events surrounding the November 3, 2005, letter of warning were added to his claims. The Equal Employment Opportunity Commission Administrative Judge ruled in favor of the Postal Service on August 29, 2006. The Postal Service issued its Notice of Final Action on September 29, 2006, and Ogden timely appealed the decision to the Equal Employment Opportunity Commission's Office of Federal Operations. The EEOC did not render a decision on the appeal within 180 days, giving Ogden the right to file this civil action in federal court.

Ogden filed this suit on July 28, 2008, and filed his amended complaint on October 6, 2008.

---

[1] The letter of warning states that the events transpired on October 20, 2005. However, it is clear from the record and available testimony that the events occurred on October 17, 2005.

In his amended complaint, Ogden asserts claims for age discrimination, hostile work environment, and retaliation. Defendant filed a motion for summary judgment on all of Plaintiff's claims (Def.'s Mot. for Summ. J. (Oct. 29, 2009) [Docket Entry No. 24] (Mot.)) to which Plaintiff responded (Resp.). Defendant submitted a reply in support of their motion. (Def.'s Reply to Pl.'s Resp. to Def.'s Mot. for Summ. J. (Nov. 24, 2009) [Docket Entry No. 26] (Reply).)

**Legal Standard**

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson*, 477 U.S. at 248; *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). A fact is 'material' if its resolution in favor of one party might affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 409 (5th Cir. 2002).

The burden is on the moving party to show that "there is an absence of evidence to support the nonmoving party's case." *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once the moving party meets its initial burden, the nonmoving party "must . . . set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e); *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994). The Court reviews all facts in the light most favorable to the non moving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

**Analysis**

*A. Retaliation*

To establish a claim for retaliation, the plaintiff must show that (1) the employee engaged in a protected activity, (2) the employer took adverse action against the employee, and (3) a causal connection exists between the protected activity and the adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007).

> If the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a legitimate . . . non-retaliatory reason for its employment action. If the employer meets this burden of production, the plaintiff then bears the burden of proving that the employer's reason is a pretext for the actual retaliatory reason.

*Aryain v. Wal-Mart Stores Tex., L.P.*, 534 F.3d 473, 483 (5th Cir. 2008) (internal quotation marks omitted). To show an adverse employment action to establish a case for retaliation, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). The allegedly adverse event must be "material" because "it is important to separate significant harm from trivial harms." *Id.*

Denial of leave can be an adverse employment action for purposes of Title VII retaliation claims if the denial is substantial. *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512 (5th Cir. 2001). In *Mota v. University of Texas Houston Health Science Center*, the plaintiff requested and was denied six months of paid leave and an extension of unpaid leave. *Id.* at 521–22. However, certain restrictions on leave do not constitute adverse employment actions. *See Gregory v. Tex. Youth Comm'n*, 45 Fed. App'x 323 (5th Cir. 2002) (noting that plaintiff was not denied the credit

of his annual vacation leave balance but was "merely restricted in the use of that leave on a day-by-day basis); *see also Allen v. Potter*, 115 Fed. App'x 854, 861 (7th Cir. 2004) (stating that "any denial of leave properly is characterized as a denial of the precise leave dates that [the plaintiff] had requested and not a denial of the ability to use her allotted leave time" and that four denials in one year and one in each of three years was "a mere inconvenience"). In this case, assuming that the Postal Service's actions amounted to a denial of leave, the denial does not present an adverse employment action. Ogden was denied one request for leave, and there is no indication that he lost credit for that time. In addition, the Postal Service granted all but one of his requests for leave. Such a denial is properly characterized as a denial of the precise time for leave that Ogden had requested and not a denial of the ability to use his allotted leave time. Furthermore, the Postal Service granted a subsequent request for leave so that Ogden could tend to the dental issue related to the basis for Ogden's initially-denied request for leave. Consequently, Ogden cannot establish a prima facie case for retaliation based on the Postal Service's denial of his request for sick leave.

In addition, the letter of warning issued by the Postal Service to Ogden does not constitute an adverse employment action. *See DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 Fed. App'x 437, 442 (5th Cir. 2007). Under the facts presented, the rescinded written warning would not have dissuaded a reasonable worker from making or supporting a charge of discrimination. Even if the letter were still part of Ogden's personnel file, there was a colorable ground for the warning: Ogden's returning to the postal station prior to delivering all of his mail. However, even if the basis for issuing the letter was itself a retaliatory action, the November 3, 2005, warning did not in fact dissuade a charge of discrimination, given that Ogden subsequently filed his charge of discrimination.

6

Ogden's claim for retaliation based on the denial of his request for auxiliary assistance to work an eight-hour workday does not establish that the denial of such a request constitutes an adverse employment action. Although not fully briefed and for the sake of analysis on summary judgment, it would seem that providing an employee with work beyond the scheduled eight-hour workday and then denying a request for auxiliary assistance would dissuade a reasonable worker from making a claim for discrimination. Ogden asserts that he engaged in the protected activity of filing previous Equal Employment Opportunity complaints against his supervisor, he was denied his request for auxiliary assistance, and that the denial of his request was based on his EEO complaints against his supervisor. This establishes a prima facie case for retaliation.

To show a non-retaliatory reason for the Postal Service's action, Potter asserts that Postal Service management uses a computer formula to evaluate whether a letter carrier's route is overburdened and whether to grant a request for auxiliary assistance. It is further noted that the letter carriers at the Valley Hi station contend that their routes are overburdened, which would mean that the existence of an overburdened route is systemic rather than unique to Ogden's route. The Postal Service's burden is one of production, which it has met. The Postal Service has presented a non-retaliatory reason for its denial of Ogden's request for auxiliary assistance.

With the defendant meeting its burden of production, Ogden must now demonstrate that the Postal Service's proffered reason is not true but instead is a pretext for the real retaliatory purpose. "To carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer." *McCoy*, 492 F.3d at 557. Ogden responds with the conclusory statement that "but for his prior EEO activity[,] Mr. Page would . . . have granted his request to work an eight-hour day." (Resp. at 12.) This declaration is insufficient to rebut the Postal Service's

contention that it bases decisions regarding overburdened carrier routes on its computerized system. Ogden points to no testimony nor does he present any evidence to demonstrate that his supervisor had discretion to grant auxiliary assistance in light of the Postal Service's reliance on its computer system. Furthermore, Ogden does not counter the contention that most carriers at that station feel their routes are overburdened nor does he show how the denial of his request differed from the circumstances surrounding other employees in an attempt to demonstrate how his supervisor singled him out in denying his request for auxiliary assistance. Without any evidence to specifically rebut the Postal Service's non-retaliatory basis for denying Ogden's request, Ogden is unable to pursue his claim for retaliation.

B. *Age Discrimination*

Pursuant to the Age Discrimination Employment Act (ADEA), it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To prove an ADEA claim, "[a] plaintiff must prove by a preponderance of the evidence . . . that age was the 'but for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs. Inc.*, 129 S.Ct. 2343, 2351, 174 L.Ed.2d 119 (2009). The plaintiff may present a case for discrimination by direct or circumstantial evidence, or both. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002). The Fifth Circuit Court of Appeals has stated:

> If the plaintiff produces direct evidence that discriminatory animus played a role in the decision at issue, the burden of persuasion shifts to the defendant, who must prove that it would have taken the same action regardless of discriminatory animus. If the plaintiff produces only circumstantial evidence of discrimination, the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green* guides our inquiry.

*Id.* (citation omitted). Under the framework established by *McDonnell Douglas Corp. v. Green*, the

initial burden to prove a prima facie case of discrimination falls upon the plaintiff. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In general, to satisfy this requirement, a plaintiff must demonstrate the following: (1) he is a member of a protected class; (2) he possessed the required qualifications for employment in his position; (3) despite his qualifications, he suffered an adverse employment action; and (4) that a member of another class who was similarly situated was treated more favorably. *Id.*; *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001). Once a plaintiff has demonstrated a prima facie case of discrimination, the burden then shifts to the defendant to demonstrate that the disputed actions were based upon legitimate and non-discriminatory reasons. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Okoye*, 245 F.3d at 512. Finally, if the defendant produces such reasons, the burden shifts back to the plaintiff to demonstrate that said reasons were merely pretexts for discrimination. *McDonnell Douglas*, 411 U.S. at 804; *Okoye*, 245 F.3d at 512.

Here, Ogden does not present direct evidence of discrimination. Ogden's assertions, if true, would present a circumstantial case for discrimination. As a result, the Court will evaluate this case under the framework established in *McDonnell Douglas*. Defendant moves the Court to grant summary judgment on his behalf, arguing that Ogden cannot establish that he suffered an adverse employment action. (Mot. at 13–16.) Ogden's inability to show that he suffered an adverse employment action would mean that he is unable to establish a prima facie case of discrimination. In this Circuit, "[a]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007).

As the Court has previously noted, the denial of Ogden's request for sick leave was not an adverse employment action. The dispute arises over Ogden's request for sick leave on one occasion, which was arguably denied by his supervisor, and a request for auxiliary assistance, which his supervisor denied. Ogden has accumulated a sick leave balance of more than 1,200 hours. The Postal Service did not deny Ogden a portion of his sick leave; they merely denied his use of sick leave on a particular day. Notably, the Postal Service approved a subsequent request for sick leave during business hours so that he could tend to his dental issues. Furthermore, with the exception of the denial of Ogden's request on October 13, 2005, the Postal Service has granted all of Ogden's requests for sick leave between 2000 and 2006. As a result, Ogden has not shown that the denial of his sick leave on October 13, 2005, constituted an adverse employment action because it is not an ultimate employment decision.

Moreover, the Postal Service's denial of Ogden's request for auxiliary assistance likewise does not constitute an adverse employment action because it is not an ultimate employment decision. Even if it did, Ogden fails to establish how the denial for auxiliary assistance constituted a right that the Postal Service denied him. Plaintiff has presented no evidence that the single isolated denial for auxiliary assistance—or the isolated denial for sick leave—constituted age discrimination. He does not establish how age was the "but for" cause of the challenged employer decision and cannot show it by a preponderance of the evidence. Consequently, Ogden is unable to establish a prima facie case for age discrimination based on the Postal Service's denials of his request.

Ogden is also unable to establish that the letter of warning he received on November 3, 2005, constitutes an adverse employment action. "[I]nterlocutory or mediate decisions that might lead to ultimate decisions" do not qualify as adverse employment actions. *Belcher v. Roche*, No. SA-00-

CA-1052-OG, 2002 WL 31374658, at *5 (W.D. Tex. Sept. 30, 2000). Written admonishments do not constitute ultimate employment actions. *Preston v. Tex. Dept. of Family & Protective Servs.*, No. 06-20752, 2007 WL 462000, at *3 (5th Cir. Feb. 7, 2007). Here, Ogden received a letter of warning, which is not an adverse employment action. Moreover, the Postal Service removed that letter of warning from Ogden's personnel file. Ogden is therefore unable to establish a claim for age discrimination based on the letter of warning since he cannot establish that he suffered an adverse employment action by receiving a letter of warning, much less a letter of warning that his employer withdrew from his employment file.

*Hostile Work Environment*

To prevail on a claim for hostile work environment, a plaintiff must prove: (1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome harassment; (3) that the harassment was based on the employee being a member of the protected class; and (4) that the harassment affected a term, condition, or privilege of employment. *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 330 (5th Cir. 2009). To establish the fourth element, the plaintiff must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable. *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). In determining whether a working environment is abusive, a court must consider the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. *Lindsey v. Chevron USA Inc.*, 51 Fed. App'x 929 (5th Cir. 2002). The Court will look at the totality of the circumstances to determine if the harassment is severe or pervasive. *Stewart*, 586 F.3d at 330

(citing *Lauderdale v. Tex. Dep't of Criminal Justice, Institutional Div.*, 512 F.3d 157, 163 (5th Cir. 2007)).

In his complaint, Ogden states that his allegations concerning the denial of his request for sick leave, the denial of his request for auxiliary assistance, and the subsequently-rescinded letter of warning created a hostile work environment. Ogden's allegations and attached evidence do not indicate how these alleged acts of harassment are based on his age. Ogden asserts that the actions, "coupled with past actions" place him in a "constant state of emotional distress at work and at home." (Resp. ¶ 16.) Plaintiff does not identify the "past actions" nor do those past actions serve as a relevant basis for this claim. However, aside from Plaintiff's conclusory statements declaring that the conduct is severe and pervasive, he does not describe how these three incidents were sufficiently severe and pervasive to create a hostile work environment. Even if Ogden felt embarrassed by the three incidents, it is not objectively reasonable to find that these three incidents, alone or together, constituted severe and pervasive conduct. Ogden had a single request for leave denied in the context of other requests that had been granted, a request for auxiliary assistance denied in which the Postal Service relies on a computer program to estimate the length of time each carrier should spend on a route, and a letter of warning that was issued but subsequently rescinded. "Title VII was only meant to bar conduct that is so severe and pervasive that it destroys a protected classmember's opportunity to succeed in the workplace." *Shepherd v. Comptroller of Pub. Accounts of the State of Tex.*, 168 F.3d 871, 874 (5th Cir. 1999) (quoting *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir.1996), *cert. denied*, 519 U.S. 1055, 117 S.Ct. 682, 136 L.Ed.2d 607 (1997)) (internal quotation marks omitted). Based on a consideration of all the circumstances, the actions of the Postal Service do not constitute severe and pervasive conduct to create a hostile work

environment.

## Conclusion

Ogden has not provided evidence to establish a prima facie case for age discrimination, retaliation, or a hostile work environment. Even assuming that the denial of his request for auxiliary assistance established a prima facie case for retaliation, Ogden did not provide any evidence to sufficiently rebut Potter's non-retaliatory basis for the denial. Accordingly, Defendant's motion for summary judgment is GRANTED.

It is so ORDERED.

SIGNED this 14th day of January, 2010.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE